LOUISVILLE & NASHVILLE RAILROAD COMPANY, Appellant,

v.

Nancy VANDERPOOL, Administratrix of the Estate of James Matt Vanderpool, Deceased, Appellee.

Court of Appeals of Kentucky.

June 15, 1973.

**350**

Edwin R. Denney, Lexington, Glenn W. Denham, Middlesboro, James M. Terry, Wandaleen Poynter, Louisville, for appellant.

Keith E. Roberts, Wheaton, Ill., W. M. Cox, Jr., Johnson, Teague & Cox, Williamsburg, for appellee.

GARDNER, Commissioner.

James Matt Vanderpool was struck and killed by a train of the Louisville and Nashville Railroad Company (hereinafter called L & N) in Williamsburg, Kentucky. His administratrix was adjudged $50,000 for damages and $790 for burial expenses. Recovery was attained under the last clear chance doctrine.

Vanderpool had been walking the railroad tracks from his home to Williamsburg when he stopped near the whistle post and sat on or near one of the rails. Gary Ashton saw Vanderpool on the tracks with his "arm up on his knee, shaking his head and hollering, 'Oh, Lordy.'" Ashton went on to his uncle's house some 750 feet away, sat down to eat, then went to the back porch and saw Vanderpool still sitting on the tracks and heard him say, "Oh, Lordy." Within a few minutes the accident occurred. Also, shortly before the accident Wolford Hill, a neighbor, saw Vanderpool sitting on the tracks with his elbows on his knees and his face between his hands. He talked with Vanderpool who appeared to be quite nervous but rational as evidenced by his talk. Vanderpool raised up and staggered forward. Hill took him by the arm and assisted him to a sitting position eight or ten feet from the tracks. He didn't smell any whiskey on Vanderpool's breath.

Vanderpool was struck by the train and thrown a few feet from the tracks, receiving a severe injury to his head. It was con-

ceded that the train's striking him caused his death. The engine went some 500 feet beyond the body before stopping.

The burden of proving the essential elements of the last clear chance doctrine must be carried by the party who attempts to invoke its use. Coburn v. Louisville & N. R. Co., 295 Ky. 530, 174 S.W.2d 775 (1943); Ferguson v. Stevenson, Ky., 427 S.W.2d 822 (1968). One of the considerations is that the only duty one owes a trespasser (as was Vanderpool) is to exercise ordinary care to avoid injuring him after his position of peril is discovered. Frankfort & C. R. Co. v. Holder's Adm'r, 307 Ky. 11, 209 S.W.2d 722 (1948); Louisville and Nashville Railroad Company v. Hall, Ky., 327 S.W.2d 400 (1959). Another prerequisite to recovery is that the one causing the injury must have had the last clear chance to avoid the accident. Kentucky & West Virginia Power Co. v. Lawson, Ky., 240 S.W.2d 843 (1951). We believe the case must be reversed for failure of appellee to show that appellant was aware of Vanderpool's peril in time to avoid the accident.

The evidence relating to Vanderpool's inability to extricate himself is not determinative of whether appellant was aware of his peril. The only living eyewitnesses were the train's crewmen who testified that the train was traveling 20 to 25 miles per hour. The speed limit at that place was 25 miles per hour. Each crewman testified that almost immediately upon their seeing Vanderpool the train was placed in "emergency," meaning the brakes were applied and the whistle and bell activated. There was no evidence of defect of the brakes or whistle or bell. There remains only the question, therefore, as to whether the physical facts so contradicted the crewmen's testimony as to present a jury issue. Wimsatt's Adm'x v. Louisville & N. R. Co., 235 Ky. 405, 31 S.W.2d 729 (1930). Appellee lays great stress on the testimony of a civil engineer who stated that at 20 miles per hour the train would have traveled 532 feet after the brakes were applied before stopping. Testimony of the crewmen, while varied, justified a finding that the train was 522 feet from Vanderpool when he was first seen. Appellee argues that there was evidence, therefore, sufficient to make a jury issue as to whether appellant was negligent. We do not believe the answer is found in this proposition.

The question is not whether the crewmen saw Vanderpool in time to stop before striking him but whether they saw his peril in time. Louisville & Nashville Railroad Co. v. Wallace, Ky., 302 S.W.2d 561 (1957). This, of course, must be viewed from the standpoint of the crewmen. Under evidence favorable to appellee the crewmen saw Vanderpool over 500 feet away and possibly could have stopped before striking him. But Vanderpool was in a sitting position, which indicated he was not unconscious or immobile. He was not in peril unless he could not remove himself from the tracks. The crewmen could not have known therefore that he was in peril.

In General Telephone Company of Kentucky v. Yount, Ky., 482 S.W.2d 567 (1972), we considered the distinction between a "helpless plaintiff" and an "inattentive plaintiff" as it applied to an automobile accident. We think the discussion is apropos of a train accident, realizing of course that a motorist, because of his ability to swerve his car or stop within a relatively short distance, may have a chance to avoid the accident much later in point of time than the train engineer; and realizing also that in a train accident case the engineer owes no duty to discover the presence of someone on the tracks since that person is a trespasser. Yount espouses the rule that if the plaintiff is inattentive, the defendant is liable only if the plaintiff remains inattentive to the point that he could not remove himself from peril and the defendant realizes, or has reason to realize, the plaintiff is inattentive and will likely remain so and the defendant could avoid

the accident by reasonable means. See Restatement, Second, Torts, section 480. It might be argued that in the present case there was evidence that the train could have been stopped within 522 feet, and since there was testimony of the crewmen justifying a finding that the train was 522 feet from Vanderpool when he was first seen, it reasonably could be inferred that the crewmen were in error when they stated that the train was placed in emergency immediately upon their seeing Vanderpool. Even so, we do not believe this argument reaches the crucial point. The present case involves an inattentive victim. After discovering Vanderpool on the tracks, L & N was liable only if the engineer realized, or should have realized, that Vanderpool was inattentive and would likely remain so to a point in time when he could not remove himself from danger, and the engineer had a reasonable opportunity to avoid striking him. The present case offers no evidence substantiating this situation. There was nothing indicating that Vanderpool could not remove himself from danger until the train came so close that it was physically impossible for him to get out of the way. At that point, of course, the train could not be stopped in time to avoid striking him.

If Vanderpool had been lying on the tracks the crewmen might have been placed on presumptive notice that he could not extricate himself from his position, a question we need not pass on. We pointed out the distinction in Louisville and Nashville Railroad Company v. Hall, supra, where the deceased was standing outside the rail and leaning over the track, apparently trying to retrieve something with his cane, when the engineer saw him. Therein we said of Wimsatt's Adm'x v. Louisville & N. R. Co., 235 Ky. 405, 31 S.W.2d 729 (1930), and Cincinnati, N. O. & T. P. Ry. Co. v. King's Adm'x, 284 Ky. 694, 145 S. W.2d 1053 (1940); "In both of these cases the trespassers were lying in the middle of the track in an unconscious and helpless condition. This is a significant distinguishing feature."

The lower court was in error in overruling appellant's motion for a directed verdict.

The judgment is reversed.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.