### Henson's Administrator v. Hines, Director General of Railroads, et al.

(Decided December 9, 1921.)

### Appeal from Harlan Circuit Court.

1. Railroads—Trespassers on Tracks.—Evidence that from thirty-five to one hundred persons daily travel along a railroad company's tracks in a sparsely settled neighborhood out in the country and

that such use is scattered out through the entire day is insufficient to convert such trespassers into licensees so as to place upon the company the duty, in operating its trains at such places, of maintaining a lookout for such persons in anticipation of their presence upon the tracks or to carry the question to the jury.

2.  Railroads—Trespassers—Contributory Negligence.—A person walking along the company's track who hears a train approaching from the rear and without looking around leaves a place of safety and steps upon the track upon which the train is approaching and is injured, upon the mistaken belief that it is using another track, is guilty of contributory negligence as a matter of law.

G. G. RAWLINGS for appellant.

B. D. WARFIELD, WM. LOW, H. L. BRYANT and J. T. BOLING for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

On May 27, 1918, Mrs. Arbana Henson was struck and killed by a passenger train of the Louisville & Nashville Railroad Company and this action was instituted by her administrator against the company and Director General of Railroads to recover for her death.

The defendants traversed the allegations of the petition and pleaded contributory negligence, which was denied. At the conclusion of the evidence for the plaintiff the court sustained defendants' motion for a directed verdict, and complaining of this the plaintiff appeals from the judgment that followed dismissing her petition.

The accident occurred out in the country between two small stations, Wilhoit and Hoit, which are about two miles apart, and within about a quarter of a mile of Wilhoit. As detailed by plaintiff's witnesses, Mrs. Henson and another lady were walking in the direction of Wilhoit on a switch track when the defendants' passenger train going in the same direction approached them from the rear, but on the main track. When the train was within some two or three hundred yards of them the whistle was blown for Wilhoit station, at which time, because of a curve in the tracks, the engineer could not have seen decedent and her companion. When the signal was given by the engineer decedent and her companion, without looking around, crossed from the switch track on to the main track and continued thereon in the direction of Wilhoit without ever looking around and they had traveled about 120 feet from the time they crossed on to the main track until the train struck Mrs. Henson. The train

was running at about twenty-five or thirty miles an hour; an alarm signal was given and the train began to slow up about the time or just before the accident and it was stopped in about 200 or 250 feet.

Plaintiff's witness, John Howard, who was standing in front of his house on a hillside about twenty feet from the company's right of way fence and in plain view of the accident, states that he heard the train give the station signal for Wilhoit; that decedent and her companion could easily have heard it also and that he believed they did so and crossed from the side track to the main track immediately thereafter under the mistaken belief that the train was coming on the switch track rather than the main track; and evidently this is true.

There is no evidence that the engineer of the train saw decedent before he gave the danger signal and began to stop the train and the evidence is not at all satisfactory that he could have seen her in time to have saved her even if he had been maintaining a lookout in anticipation of the presence of persons on the track at that place. But, assuming that the evidence is sufficient for this latter purpose, there is no evidence whatever of negligence unless at this place defendant's agents in the operation of trains were under a duty of maintaining a lookout.

At the time of the accident there were not more than fifteen or twenty houses in the vicinity of Wilhoit and but three or four houses at Hoit, and it is extremely doubtful from the evidence whether Hoit became a regular stopping point for trains before or after the accident. But assuming that is was after the accident, since the evidence of the extent of the travel along the railroad track between these two stations is based in part at least upon the theory that Hoit became a stopping point after the accident and that the people living near there were at the time of the accident required to go to Wilhoit to take or leave the train, the witnesses who attempt to fix the number of persons who daily pass along the railroad tracks at the place of the accident do so as follows: John Howard at from thirty-five to forty, Frank Gross at from fifty to one hundred, B. F. York at from fifty to seventy-five and George Bingham at from seventy-five to one hundred. The last three of these witnesses admitted the numbers given by them were estimates or merely guesses and that they had no accurate knowledge of just how many people did use the tracks at this place in a day. All of these witnesses testify that the use was scattered

out throughout the entire day, which amounts to about one every seven or eight minutes at the most.

That such use of the company's tracks in a sparsely settled neighborhodd out in the country is not sufficient to convert trespassers into licensees and place upon the company the duty of anticipating their presence and maintaining a lookout for them, or even to carry the question to the jury, has been consistently adhered to by this court in the more recent cases. Willis' Admrx. v. L. & N. R. R. Co., 164 Ky. 124, 175 S. W. 18; L. & N. R. R. Co. v. Horton, 187 Ky. 617, 219 S. W. 1084; Hungate v. Hines, 188 Ky. 365, 222 S. W. 83; C., N. O. & T. P. Ry. v. Joel T. Brown, by, etc., 192 Ky. 724.

Hence, plaintiff having failed to prove any negligence on the part of the defendant, the court did not err in sustaining the motion for a directed verdict.

This is also true for another reason, since it is shown without contradiction that decedent and her companion, when they heard the train, approaching from the rear, whistle for Wilhoit under the mistaken belief that the train was approaching on the track upon which they were perfectly safe and without looking around crossed to the main track upon which the train was in fact traveling. In so doing they were clearly guilty of contributory negligence as a matter of law. See L. & N. R. R. Co. v. Fentress' Admr., 166 Ky. 477, 179 S. W. 419; L. & N. R. R. Co. v. Trower's Admr., 131 Ky. 589, 115 S. W. 719; L. & N. R. R. Co. v. Taylor's Admr., 169 Ky. 435, 184 S. W. 371; C. & O. Ry. Co. v. Hunter's Admr., 170 Ky. 4, 185 S. W. 140; Stull's Admx. v. Kentucky T. & T. Co., 172 Ky. 650, 189 S. W. 721.

Wherefore the judgment is affirmed.