## Louisville & N. R. Co. v. Arrowood's Adm'r.

Nov. 28, 1939.

H. T. Lively, J. Miller White, Ervine Turner and C. S. Landrum for appellant.

C. A. Bach for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

This action for damages for the death of Sheridan Arrowood by a train while walking on the track was predicated on the allegation that he was a licensee by reason of permission or toleration of the Railroad Company of persons in large numbers using its track as a public way. To reverse the judgment of $3,000 the Railroad Company argues that the trial court committed error in overruling its motion for a peremptory instruction and in the instructions.

The first point is rested upon the ground that the evidence did not establish the use by pedestrians, at the

time and place Arrowood was killed, in such numbers as to charge its trainmen with the observation of a lookout duty, with its accompanying responsibilities to licensees of that character. It was not claimed and there is no evidence that they failed to observe the duties owing a trespasser.

Arrowood was killed about one mile from Whick, a hamlet in Breathitt County, consisting of only the depot, a store and a dwelling, and two miles from Wolf Coal where there were only a store and a dwelling. As we understand, there were few, if any, residences near the place of the accident. The North Fork of Kentucky River is immediately adjacent to the railroad and a county road is just on the other side of the river. The man was walking south (in railroad parlance) and the train was going north. From the point of accident, the track is straight and a train can be seen at least 600 feet. Arrowood was killed about 5 o'clock in the afternoon of July 1, 1935. The only witness testifying to the accident was Jim Deaton, who, with his brother, Farmer Deaton, was walking on the county road about 250 yards away. They had been with Arrowood "sanchoing" around Whick during the afternoon. Deaton testified he saw Arrowood on the track "not more than a minute" before he was struck. The train stopped and the trainmen looked about and then went ahead. None of the trainmen testified. The defendant relying on its motion for a directed verdict introduced no evidence.

Testimony as to the use of the track was given by several witnesses, none of whom lived close by, and all of whose evidence is indefinite and unsatisfactory. In substance, they merely say that they had seen as many as 40 or 50 people "in a gang" walking the track to Wolf Coal store to get their "relief stuff" twice a month, although people had been using the track every day since the railroad was built, about twenty years ago. It was related that the track was used in going to meetings at the church or graveyard somewhere over about Whick, as we understand. On church day there would be many people going to and fro. The accident happened on Monday and there was no meeting at either the church or graveyard that day. The county road was in such bad condition that it could hardly be traveled, particularly on horseback, which was one of the means of travel up and down the railroad.

The extent of use by the public of a railroad track

necessary to form the basis of legal liability toward one who otherwise would be a trespasser cannot be standardized with particularity. The locality of each accident has an important bearing in the effort to determine whether people should be expected upon the track at the place involved. A thickly settled place, as a town or village, is one element to be considered. A sparsely settled, remote place is another. Proof of habitual and frequent use by such a number of people as may charge the railroad company with notice often clearly presents a question of fact to be submitted to the jury. But the sufficiency of proof to authorize a submission to the jury is a question of law to be decided by the court. An examination of our many cases shows that it has never been held sufficient to establish the duty of anticipation of the presence of persons at a certain time every day in such a rural place as described here by merely proving an intermittent use on special occasions by groups of people. The acquiescence by the railroad company in that use of its property, in the sense that it does not try to prevent it, does not convert the occasional pedestrian into a licensee so as to impose the duty upon the company of expecting his presence. Chesapeake & O. Railroad Co. v. Nipp's Adm'x, 125 Ky. 49, 100 S. W. 246, 30 Ky. Law Rep. 1131; Willis' Adm'x v. Louisville & N. Railroad Company, 164 Ky. 124, 175 S. W. 18; Louisville & N. Railroad Company v. Stidham's Adm'r, 194 Ky. 220, 238 S. W. 756; Chesapeake & O. Railway Company v. McMath's Adm'r, 198 Ky. 390, 248 S. W. 1051. In the Stidham case, the precedents were reviewed and it was held that the duty of trainmen to anticipate the presence of persons upon the track, and to exercise ordinary care to discover and avoid injuring them, does not arise where the greatest number of persons using the track, according to the largest estimate of many of the witnesses, was 150 persons each 24 hours, and the place of the accident was in the country, although the track connected two incorporated towns located about 3 miles apart. We have held insufficient to establish those duties estimates of the use of the track in such places by as many as 60, 75, or 100, or 125 persons every day. Cornett's Adm'r v. L. & N. Railroad Company, 181 Ky. 132, 203 S. W. 1054; Sizemore's Adm'r v. L. & E. Railway Company, 169 Ky. 497, 184 S. W. 383; Henson's Adm'r v. Hines, 193 Ky. 198, 235 S. W. 359; Willis' Adm'x v. L. & N. Railroad Company, supra; Chesapeake & O. Railway Company v. McMath's Adm'r,

supra; Louisville & N. Railroad Company v. Foust, 274 Ky. 435, 118 S. W. (2d) 771.

We are of opinion that the evidence was not sufficient to take the case to the jury and that the defendant's motion for a directed verdict should have been sustained.

The instructions predicated the defendant's duty of keeping a lookout and taking other precautionary measures upon the belief by the jury from the evidence that at the point of the accident the track "was frequently and habitually used by the public as a footway, with the knowledge and acquiescence of the defendant, and was a place where the presence of persons on the track was to be anticipated."

In Chesapeake & O. Railway Company v. Honaker's Adm'r, 190 Ky. 125, 226 S. W. 394, instructions using the condition that the track was "habitually used" were approved, but they were not questioned on that ground. However, in Louisville & N. Railroad Company v. Hyde's Adm'r, 221 Ky. 39, 297 S. W. 814, for reasons stated, we held the instruction prejudicially erroneous which used only that term. And in Louisville & N. Railroad Company v. Foust, supra, we held erroneous an instruction in all respects like that given in the instant case. In those two cases, and others, we have declared that the correct condition should be stated in the instruction as that "the track was habitually used by the public in such large numbers that the presence of persons on the track at that time and place was reasonably to be expected."

Wherefore, the judgment is reversed.