## Moore v. Illinois Cent. R. Co.
### Holley v. Same.
### Maxfield v. Moore.
### Same v. Holley.

Oct. 24, 1944.

Wheeler & Shelbourne for Illinois Cent. R. Co. and C. C. Maxfield.

M. C. Anderson for Moore's adm'r.

Holland G. Bryan for Holley's adm'r.

OPINION OF THE COURT BY JUDGE HARRIS—Affirming in part, reversing in part.

The Illinois Central Railroad Company has a north-south line of track which crosses at grade one of the east-west public highways of McCracken County some five miles south of Paducah, and something like two miles south of West Paducah. On the 5th day of November, 1938, at about 9:30 at night, at this crossing, one of its freight trains, which was travelling south and operated by its engineer Maxfield, collided with an automobile which was traveling east and occupied by Harrison Holley and Leonard Moore. As a result of the collision both occupants of the car were killed. The administrator of the Moore estate and the administrator of the Holley estate each sued the Railroad Company and the engi-

neer jointly to recover damages. By agreement of the parties the two cases were tried together. At the close of the evidence both the Railroad Company and the engineer moved for a peremptory instruction. The motion of the Railroad Company was sustained and the jury rendered a verdict accordingly; but as to the engineer the motion was overruled, and the jury returned a $2,000 verdict against him in each case. From these verdicts and the judgments thereon against him, the engineer appeals; and from the action of the court in peremptorily instructing the jury to find for the Railroad Company, and from the verdicts and judgments resulting therefrom, each administrator appeals.

The evidence on behalf of the Railroad Company shows without contradiction that all necessary and proper signals were given. In fact, the appellant administrators make only two serious contentions: (1) That following the accident the engineer said, as a part of the res gestae, that he did not see the automobile until he heard the racket. The administrators argue that this is evidence of a failure on the part of the engineer to keep a lookout, and that the court was in error in not allowing the jury to say, under a proper instruction, whether there was recoverable negligence in this particular. (2) That the court was in error in denying them a proper dangerous crossing instruction. The appellant administrators seem to recognize that if they are mistaken in those, two contentions, the action of the trial court in peremptorily instructing the jury in favor of the Railroad Company was correct.

Due to the loose and indefinite manner in which the witnesses were permitted to testify with reference to objects, locations, distances, and conditions, it may be that the court does not have as clear a conception of the crossing and of the conditions surrounding it as would otherwise be the case. As the court understands it, the evidence is that at the crossing and for something like a mile northward the railway track is straight, or approximately straight; while the highway runs east and west and makes a slight curve just before reaching the crossing, where it makes an ascent of about one and one-half feet. Just west of the railway tracks and just north of the highway, there was a small patch of cornstalks at the time of the accident, and nearby there was what is designated in the record as a woodlot. From a point about one-half mile west of the crossing a motorist ap-

proaching from that direction would have a view from time to time, and at most times, of any train that might be approaching from the north; and from the time he came to within six hundred feet of the railway track he would have a continuous view of any such approaching train. The evidence does further show, however, that the lettering and paint on the cross-arm signal is somewhat faded, and the signal is so located that the lights of an automobile approaching from the west do not fall upon or disclose the presence of the cross-arms until the motorist has reached a point within something like sixty feet of the crossing. Measured by Justice's Administrator v. Chesapeake & Ohio Railway Company, 244 Ky. 168, 50 S. W. 2d 531, the facts of which were more favorable to the plaintiff's contention than those here, and by Louisville & N. Railroad Company v. Marshall's Administratix, 289 Ky. 129, 158 S. W. 2d 137, the crossing in the instant case is not an unusually dangerous one, and the lower court was not in error in holding that it was not.

After the collision had occurred, one of the witnesses for the plaintiffs came to the crossing and learned of the accident. At the request of a member of the train crew he got into his automobile, drove to a point about two miles distant, arranged by telephone for medical assistance, was joined by his wife and two other persons and returned to the crossing. From the crossing the witness and his companions proceeded on foot to the engine of the train, a distance of some 1500 to 1700 feet. And then it was that the engineer is alleged to have made the statement—which he denies—that he did not see the automobile until he heard the racket. From the foregoing, to say nothing of the other evidence, it is clear that at least thirty minutes, and probably three-quarters of an hour, had elapsed since the accident. Undoubtedly this made the statement too remote in point of time and circumstance to constitute it a part of the res gestae. See Consolidated Coach Corporation v. Earls' Adm'r, 263 Ky. 814, 94 S. W. 2d 6, which constitutes a most excellent and thoroughgoing collation of the decisions of this court upon this question.

Since the statement in question is competent substantive evidence against the engineer as being a declaration against interest, the question arises as to whether it was sufficient to carry the case to the jury. It is not enough that he failed to keep a lookout, it is indispens-

able that there be some competent evidence from which it may be fairly or reasonably inferred that such failure to keep a lookout caused the accident. This principle is too well settled to require a citation of authorities. Aside from the testimony of the engineer—which clearly establishes a proper lookout on his part—there is no evidence indicating, or from which it is fairly inferable, that the automobile reached the crossing in time for the engineer to discover its presence or the peril of its occupants in time to avoid the collision, or in time to give any signal or warning that he did not give, or to take any action that he did not take. Under the circumstances, the trial court should have sustained the engineer's motion for a peremptory instruction. And that he is now instructed to do upon another trial if the evidence is substantially as it was on the former trial.

Whether the jury should have been sent at night to view the crossing, as requested by the administrators, was a matter within the reasonable discretion of the trial court, and under all of the facts and circumstances of the case we are not prepared to say that he abused that discretion in denying the motion.

The contention as to excessive speed is found to be without merit.

By sustaining the Railroad Company's motion for a peremptory instruction, the lower court necessarily held that the evidence was not sufficient to establish that the crossing in question was an unusually dangerous one. This being so, he should not have submitted this feature of the case in instruction No. 1. Furthermore, negligence of a railroad company in the maintenance of an unusually dangerous crossing is not imputable to its engineer. Upon another trial these objectionable features should be eliminated from the instructions.

Wherefore, each case is affirmed as to the Railroad Company; and each reversed as to the engineer, with instructions to grant him new trials consistent with this opinion.